IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Samuel A. Wilder, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Tarcia L. James, in her individual ) <br> capacity as Nurse at McCormick ) <br> Correctional Inst., and Kellie L. Brewer, ) <br> in her individual capacity as Nurse at ) <br> McCormick Correctional Inst., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 2:15-cv-00270-CMC-MGB <br><br> **ORDER AND** <br> **REPORT AND RECOMMENDATION** <br> **OF MAGISTRATE JUDGE** |

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgement (Dkt. No. 21) and Plaintiff's Motion to Amend (Dkt. No. 44).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

Plaintiff filed the instant Complaint on or about January 16, 2015. (*See generally* Dkt. No. 1.) On July 23, 2015, Defendants filed a Motion for Summary Judgment. (Dkt. No. 21.) By order filed July 24, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 22.) On or about August 10, 2015, Plaintiff filed a Motion for Permissive Joinder. (*See* Dkt. No. 32.) On August 13, 2015, the undersigned issued the following text order:

> TEXT ORDER denying 32 Motion for Permissive Joinder. In his motion, Plaintiff states that he seeks an "Order for Permissive Joinder of the Defendants" pursuant to Rule 20(a) of the Federal Rules of Civil Procedure. (Dkt. No. 32 at 2 of 3.) Plaintiff names "Tarcia L. James, in her individual capacity as Nurse at McCormick

1

>Correctional Inst." and "Kelie L. Brewer, in her individual capacity as Nurse at McCormick Correctional Inst." in his motion. (Id.) These two individuals are already defendants in the instant action; joinder is therefore not needed. Accordingly, Plaintiff's Motion for Permissive Joinder (Dkt. No. 32) is DENIED. AND IT IS SO ORDERED.

(Dkt. No. 34.) Plaintiff filed several responses to Defendants' Motion for Summary Judgment. (*See* Dkt. No. 37; Dkt. No. 39; Dkt. No. 43.) On or about October 9, 2015, Plaintiff filed a Motion to Amend; Defendants oppose that motion. (Dkt. No. 44; *see also* Dkt. No. 45.)

## PROCEDURAL FACTS

Plaintiff, who is currently incarcerated at McCormick Correctional Institution ("MCI") of the South Carolina Department of Corrections ("SCDC"), brings the instant action against two nurses at MCI. (*See generally* Dkt. No. 1.)[1] Plaintiff alleges that on March 21, 2013, he "started shaking," so he asked Officer Few if he could go to medical. (*See* Dkt. No. 1 at 4 of 7.) According to Plaintiff, he left for medical after Officer Few "cleared it." (*Id.*) He alleges, however, that once he got to medical, Defendant Nurse James "with an[] inflame voice and erratic disposition expelled [him] from medical stating no one called them." (*Id.*) Plaintiff alleges that he told Defendant Nurse James that he "ha[d] the shakes," but he left and went back to the dorm. (*Id.*) Plaintiff states that once he got back to the dorm, he "went to [his] room and passed-out and woke up from the floor." (*Id.*) Plaintiff further states (verbatim),

>My left arm had been bleeding from the elbo and the back of my shoulder has a discomfort. Nurse James[] acted with deliberate indifference. . . . Defendant Nurse James violated Plaintiff's Eight Amendment right to be free from cruel and unusual punishment by doing nothing at medical even though there was no one in medical, and I had the shakes with no help from medical and had to make to the dorm with fear and weakness setting in until I fainted and woke up on the floor in pain, bleeding from the elbo and back of my shoulder had a discomfort. There was no follow-up on this occurrence.

(*Id.*)

---

[1] Plaintiff also originally named Asia Few, a correctional officer at MCI, as a Defendant. (*See generally* Dkt. No. 1.) However, she has since been dismissed and is no longer a party to the case *sub judice*. (*See* Dkt. No. 9.)

2

Although Plaintiff did not mention Defendant Brewer's name in the "Statement of Claim" section of his Complaint, he did attach his grievances to his Complaint, and those grievances do mention Defendant Brewer. (*See* Dkt. No. 1 at 4 of 7; *see also* Dkt. No. 1-1.) From a review of those attached grievances, it appears that Defendant Nurse Brewer "may have told" Defendant Few that Plaintiff could be sent to medical. (*See* Dkt. No. 1-1 at 2 of 5.)

In the "Relief" section of his Complaint, Plaintiff states that he seeks a declaration "that the acts and omissions described [in his Complaint] violated Plaintiff's rights under the Constitution and the laws of the United States." (Dkt. No. 1 at 6 of 7.) Plaintiff also seeks compensatory and punitive damages. (*Id.*)

## **DISCUSSION**

As noted above, two motions are currently before the Court: Plaintiff's Motion to Amend (Dkt. No. 44) and Defendants' Motion for Summary Judgment (Dkt. No. 21). The undersigned will address Plaintiff's Motion to Amend (Dkt. No. 44) first.

I. Plaintiff's Motion to Amend (Dkt. No. 44)

Plaintiff filed the instant Motion to Amend on or about October 9, 2015. (*See* Dkt. No. 44) Defendants oppose amendment, stating that " Plaintiff should not be allowed to amend his Complaint at this late stage of this action." (Dkt. No. 45 at 1.) Defendants note that Plaintiff did not seek leave to amend after they asserted in their Answer that Plaintiff "failed to state sufficient facts to state a claim," nor did Plaintiff promptly seek to amend after Defendants filed their Motion for Summary Judgment, "in which Defendants argued Ms. Brewer should be dismissed for failure to state a claim." (*Id.*) Defendants assert that they "have expended considerable time and resources in regards to the allegations in Plaintiff's Complaint and he should not be allowed to amend at this late stage of the litigation." (*Id.*) Additionally, Defendants contend that Plaintiff's request to amend should be denied because Plaintiff's proposed amended complaint does not state a claim against Brewer. (*See id.* at 2.)

Rule 15(a) of the Federal Rules of Civil Procedure allows a plaintiff, subject to certain time limitations, to amend a pleading once as a matter of course. *See* FED. R. CIV. P. 15(a)(1). Otherwise, a plaintiff may amend the complaint only with leave of the court or with the consent of the defendant. *See id.*; *see also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Rule 15(a) provides, however, that leave to amend should be "freely give[n] . . . when justice so requires." FED. R. CIV. P. 15(a). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber*, 438 F.3d at 426 (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957); *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999)). The Fourth Circuit has interpreted "Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* at 426-27 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

In the instant action, Plaintiff seeks leave to amend to add the following allegations (verbatim):

> When I filed a grievance I learned that Nurse Brewer had received a phone call from Officer Few about me coming to medical, and she done nothing with that information. Nurse Brewer did not act reasonably with that information and she intentionally withheld that information and she knew Plaintiff faced a substantial risk of serious harm and disregard that risk which amount to deliberate indifference to a serious medical need.
>
> Nurse Brewer violated Plaintiff's Eight Amendment Right to be free from cruel and unusual punishment by not doing nothing even though there was no one in medical and I had the shakes with no help from medical and had to make to the dorm with fear and weakness setting in until I fainted and woke from the floor in pain, bleeding from my elbo and back of my shoulder has a discomfort. There was no follow-up on this occurrence.

(Dkt. No. 44-1 at 1-2.)

4

There is no evidence that Plaintiff filed the instant motion in bad faith, and amendment would not prejudice Defendants because the essence of Plaintiff's proposed additional allegations against Defendant Brewer are generally contained in the documents Plaintiff filed along with his Complaint. (*See generally* Dkt. No. 1-1.) Although the undersigned concludes below that Plaintiff ultimately cannot prevail on the merits, the undersigned concludes that the requested amendment is not futile, as it is not "clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510. Accordingly, Plaintiff's Motion to Amend (Dkt. No. 44) is granted. The Clerk is directed to append Plaintiff's "Proposed Amendment to Complaint" (Dkt. No. 44-1) to Plaintiff's original Complaint (Dkt. No. 1; Dkt. No. 1-1), and docket that new filing as Plaintiff's Amended Complaint. Defendants need not file an Answer to the Amended Complaint; the Court deems Defendants' Answer at Docket Number 19 as the Answer to the Amended Complaint.

II. Defendants' Motion for Summary Judgment (Dkt. No. 21)

Defendants contend they are entitled to summary judgment for several reasons. (*See generally* Dkt. No. 21.) First, Defendants assert that Defendant Brewer should be dismissed because Plaintiff fails to state a claim against her. (*See* Dkt. No. 21-1 at 1-3 of 13.) Defendants assert that Plaintiff "has failed to satisfy the requirements of Rule 8 as he fails to even mention Defendant Brewer in his Complaint." (*Id.* at 3.) Defendants seek dismissal of Defendant Brewer because he failed to set forth any allegations against her. (*Id.*)

While the undersigned agrees with Defendants that Plaintiff did not specify Defendant Brewer's alleged actions in the "Statement of Claim" section of his Complaint, he did attach grievances to his Complaint. (*See* Dkt. No. 1 at 5 of 7; *see also* Dkt. No. 1-1.) Those grievances contain the crux of Plaintiff's allegations against Defendant Brewer: that she told Officer Few to send Plaintiff to medical but did not communicate that information to others in the medical department. (*See* Dkt. No. 1-1 at 2-3 of 5.) Additionally, Plaintiff's Motion to Amend has been granted. The undersigned would therefore not recommend dismissal for failure to comply with Rule 8.

5

Defendants next argue that they are entitled to summary judgment "because the matters asserted by the Plaintiff do not fall within the scope of 42 U.S.C. § 1983." (Dkt. No. 21-1 at 3.) Defendants contend that their actions do not rise to the level of deliberate indifference. (*See id.* at 3-8.)

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (internal citations omitted). To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." *Id.* It is well-settled that mere negligence does not constitute deliberate indifference. *Estelle*, 429 U.S. at 105-06; *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (holding that

"[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Defendants attached several documents to their Motion for Summary Judgment, including the Affidavit of Defendant Nurse James. (*See* Dkt. No. 21-2.) Therein, Defendant James states, *inter alia*,

> 3. I recall the Plaintiff and have seen him on multiple occasions. I do not recall the date, but I do recall one occasion where the Plaintiff came to the medical department requesting to be seen. Plaintiff did not have an Order to Report and I had not been made aware that he would be coming to the medical department. I instructed the Plaintiff to return to his dorm and sign up for sick call because he was in no apparent distress, and this was not an emergency situation. I did not observe the Plaintiff shaking or in any type of distress that required him to be seen immediately.
>
> 4. The Plaintiff was housed in the general population and inmates in the general population can sign up on weekdays to be seen at sick call. If an inmate signs up for sick call, he will be seen by medical personnel. If an inmate has a medical condition which requires immediate care, he will either be brought to the medical department by security personnel to be seen or security personnel will contact medical department to determine if the inmate needs to be seen. The inmate can then be instructed to report to the medical department if necessary. In addition, security personnel can also contact medical personnel who will respond to the area where the inmate is located to assess and provide medical care in some situations.
>
> 5. On this occasion, correctional staff may have contacted medical personnel and been instructed to send Plaintiff to the medical department, but I was not directly contacted and was not aware if this did occur. Even though I had not been informed the Plaintiff was coming to the medical department, if I had observed any kind of condition or medical issue which needed to be addressed, I would have assessed the Plaintiff. However, when I saw the Plaintiff, he was in no apparent distress and there was no indication of any medical condition which required immediate treatment or evaluation.

(James Aff. ¶¶ 3-5.)[2]

---

[2]Plaintiff complains that Defendant James' Affidavit was not "sworn on personal knowledge." (Dkt. No. 37-1 at 2 of 3.) Plaintiff is correct that James' Affidavit does not explicitly state that it is based on James' personal knowledge. (*See generally* Dkt. No. 21-2.) However, James describes her own personal interactions with Plaintiff and her own personal involvement in the incident in question. (*Id*.) Accordingly, the undersigned concludes that James' failure to explicitly state that her Affidavit is based on personal knowledge does not render the it defective. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 n.9 (4th Cir. 2002).

The undersigned recommends granting summary judgment to Defendants. As to Defendant Brewer, taking the evidence in the light most favorable to Plaintiff, Defendant Brewer received a phone call from a correctional officer about sending Plaintiff to medical, and Defendant Brewer told the officer that Plaintiff could be sent to medical; she did not, however, relay this information to anyone else in the medical department. In opposing Defendants' motion, Plaintiff asserts that Defendant Brewer "just can't receive[] a phone call that Plaintiff is coming to medical infirmary for [e]mergency [c]are and just do nothing with that information because she is working the pill line." (Dkt. No. 37 at 2 of 21.) Defendant Brewer's failure to notify other medical personnel to expect Plaintiff does not amount to deliberate indifference. At most, Defendant Brewer's conduct was negligent. *See Hartsfield v. Colburn*, 491 F.3d 394, 398 (8th Cir. 2007) ("[T]he district court found that if the treatment delay was caused in part by Colburn and Ludwig not adequately communicating their response to [the plaintiff's] October 20 sick call request, this is evidence of negligence that does not rise to unconstitutional deliberate indifference. We agree."); *see also Sanford v. Stewart*, Civ. A. No. 5:11CV2360, 2013 WL 6903780, at *13 (N.D. Ohio Dec. 31, 2013) ("Although it is perplexing that the nurses did not notify the doctor, and may have disregarded DYS standard policy in not doing so, the behavior of individual nurses that reviewed Plaintiff's complaints during the time frame of September 20, 2007 to November 28, 2007, alone, does not amount to more than negligence-it cannot be said that the failure to notify Dr. Volk during this preaggravation time rose to the level of recklessly disregarding a substantial risk of serious harm to Plaintiff."). It is well-settled that negligence is not actionable in a § 1983 action. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct. . . . "). Accordingly, the undersigned recommends granting summary judgment to Defendant Brewer.

The undersigned also recommends granting summary judgment to Defendant James. Defendant James asserts she is entitled to summary judgment because "even assuming Plaintiff had

been instructed to report to the medical department, Ms. James had not been informed this had occurred." (Dkt. No. 21-1 at 7.) She further notes that she did not see the Plaintiff shaking. (*Id*.; *see also* James Aff. ¶ 3.) The undersigned recommends granting summary judgment to Defendant James. Taking the evidence in the light most favorable to the Plaintiff, there is no dispute in the instant case that Defendant James was unaware that Defendant Brewer gave permission for Plaintiff to report to medical. It is also undisputed that Defendant James did not observe Plaintiff shaking or in any distress. On these facts, no reasonable jury could conclude that Defendant James was deliberately indifferent to Plaintiff's serious medical needs. *See Johnson v. Quinones*, 145 F.3d 164, 167-68 (4th Cir. 1998) (affirming district court's entry of summary judgment to doctors where the plaintiff "produced no evidence proving the subjective (deliberate indifference) prong. He has produced no evidence that the doctors subjectively knew about the pituitary tumor and deliberately failed to treat it."); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (rejecting claim of deliberate indifference on officer's decision to take detainee to the detention center rather than hospital, stating, "In order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective. In this case there was no objective evidence available to [the officer] at the time of the incident that [the detainee] had a serious need for medical care. While appellant has now brought forward an expert witness to testify that [the officer] should ideally have committed [the detainee] to a medical facility, the expert's opinion is nothing more than impermissible 20/20 hindsight. For at the time of their encounter, [the detainee] exhibited to [the officer] no visible external injuries. He did not have trouble breathing. He was not bleeding, was not vomiting or choking, and was not having a seizure. Furthermore, [the detainee] was conscious, at least somewhat responsive, and able to answer questions." (internal quotation marks and citations omitted)).

In opposing Defendants' motion, Plaintiff states, "The knowledge of the need for medical care and the intentional refusal to provide that care has consistently been held to surpass negligence and

constitute deliberate indifference." (Dkt. No. 37 at 2 of 21.)[3] But as detailed above, Plaintiff has not presented evidence that Defendants knew Plaintiff needed medical treatment and refused to provide it to him. *See Grayson*, 195 F.3d at 695.

The undersigned further notes that Defendants contend they are entitled to qualified immunity "because their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person would have known." (Dkt. No. 21-1 at 8.) On the other hand, Plaintiff argues Defendants are not entitled to qualified immunity because, *inter alia*, "Defendant Brewer knows she can't take . . . phone call for medical," be "informed that a prisoner is coming to [the] medical infirmary[,] and just do nothing with that information." (Dkt. No. 37 at 17 of 21.) Plaintiff further asserts that Defendant James is not entitled to qualified immunity because "she knows to expel[] a prisoner from medical infirmary whether she kn[e]w he was coming or not amounts to deliberate indifference." (Dkt. No. 37 at 17 of 21.)

The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*,

---

[3] Plaintiff also asserts that because the medical records do not indicate any evaluation of Plaintiff by Defendant James on the day in question (and that such lack of record is against SCDC policy), she cannot "testify about what occurred [on] that day in March [of] 2013." (Dkt. No. 37 at 13-14 of 21.) The undersigned disagrees. Defendant James may testify as to those events upon which she has personal knowledge. Furthermore, a violation of policy does not, in and of itself, indicate that Defendant James violated Plaintiff's constitutional rights. *See United States v. Caceres*, 440 U.S. 741 (1978); *see also Riccio v. County of Fairfax, Virginia*, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

555 U.S. 223, 231-32 (2009). As detailed above, the undersigned concludes that Defendants are entitled to summary judgment because the facts, taken in the light most favorable to the Plaintiff, do not rise to the level of deliberate indifference. Accordingly, the undersigned also recommends concluding Defendants are entitled to qualified immunity.

## **CONCLUSION**

Wherefore, it is ORDERED that Plaintiff's Motion to Amend (Dkt. No. 44) is GRANTED. The Clerk is directed to file Plaintiff's Amended Complaint, comprised of his Proposed Amended Complaint (Dkt. No. 44-1) appended to Plaintiff's original Complaint and attachments (Dkt. No. 1; Dkt. No. 1-1), as a new docket entry.

IT IS SO ORDERED.

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 21) be GRANTED.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 25, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).